**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| PROMOTION IN MOTION, INC.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ANABIO TECHNOLOGIES, LTD<br><br>　　　　Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Promotion In Motion, Inc. ("PIM" or "Plaintiff"), by way of this Complaint against Defendant AnaBio Technologies, LTD ("AnaBio" or "Defendant") alleges upon information and belief as follows:

### INTRODUCTION

1.　　　PIM is one of North America's leading manufacturers and marketers of popular brand name confections, fruit snacks, and candy products. In 2001, PIM launched Welch's Fruit Snacks, which has become the industry's top selling brand of fruit snack products. It is rated as the number one brand of fruit snacks in household penetration, loyalty, and purchase rates.



2.      Building on the immense popularity of Welch's Fruit Snacks, PIM introduced Welch's Fruit 'n Yogurt Snacks, which are comprised of a fruit center surrounded by a layer of creamy yogurt. Like its predecessor, the Welch's Fruit 'n Yogurt Snacks product has become immensely popular, with millions sold through major retailers and other channels both nationwide and internationally.



3.      PIM is now introducing another yogurt-covered fruit snack product, YogoFruits, to market. This product contains probiotics infused into portions of a yogurt coating that surrounds a fruit center.

4.      PIM's YogoFruits product is patented by U.S. Patent Nos. 9,750,267 (the "'267 patent") and 11,317,640 (the "'640 patent") (collectively, "Asserted Patents") Ex. A; Ex. B. These patents describe a probiotic-containing fruit snack with a barrier layer that protects the probiotic cultures from the moisture of the fruit center. The Asserted Patents are described in more detail below and are attached hereto as Exhibits A and B. The '267 patent (Ex. A) issued on September 5, 2017, and the '640 patent (Ex. B) issued on May 3, 2022.

5.      After both Asserted Patents issued, AnaBio began supplying an encapsulated probiotic product to New Cibo Vita LLC and Cibo Vita, Inc. (collectively, "Cibo Vita"), which incorporated the probiotic product into a yogurt-covered fruit snack product called Yoggies.

2



6.      The Yoggies product is a copycat product that infringes PIM's Asserted Patents. Like the designs in the Asserted Patents, upon information and belief, Yoggies have a barrier layer that protects probiotic cultures contained in the yogurt coating from moisture in the fruit center. Upon information and belief, AnaBio specifically designed, manufactured, and supplied its encapsulated probiotic product to Cibo Vita for use in Yoggies in an infringing manner.

7.      Because the Yoggies product is covered by the Asserted Patents, and because AnaBio knowingly imports into the United States encapsulated probiotic products specially adapted for use in the infringing Yoggies products, AnaBio is liable for induced infringement, contributory infringement, and joint infringement of the Asserted Patents. Moreover, AnaBio's infringement is deliberate and willful.

8.      AnaBio knew about the Asserted Patents since at least April 2024. AnaBio's CEO is a named co-inventor on multiple patent publications filed by Cibo Vita that relate to the Yoggies product. Those applications were subject to International Search Reports issued on April 12, 2024 (Ex. C) and May 12, 2024 (Ex. D), which identified—and thus informed the applicants, including AnaBio—of the publications that matured into the '267 and '640 patents. Further, in conjunction with the pursuit of patents in the United States at the U.S. Patent &

Trademark Office ("USPTO"), AnaBio's CEO cited the PIM patent publication that matured into the '267 patent in Information Disclosure Statements submitted in September 2025 (as part of the applicants' obligation at the USPTO to disclose known, non-cumulative prior art). Ex. E; Ex. F. Based on this evidence, AnaBio cannot reasonably dispute that it currently knows of and has known about the existence of the Asserted Patents since at least April 2024.

9.      Further, AnaBio has known about, or at least has been willfully blind toward, the infringing nature of the Yoggies product for more than 20 months. In the International Search Report dated May 12, 2024, the European Patent Office performed a substantive analysis comparing the designs described in the publications that led to the issuance of both Asserted Patents to the designs adopted in the Yoggies product, and concluded that the designs were similar. Ex. D. The European Patent Office specifically analyzed the fruit center, the barrier layer, and the outer probiotic layer, which are all features central to infringement here. *Id.* As a co-inventor and collaborator on these applications, AnaBio and its CEO were aware of this analysis and the overlap between the features in the Yoggies product and PIM's patented technology.

10.     At this point, rather than cease its infringing activities, AnaBio deliberately and willfully continued supplying, importing, marketing, and promoting its encapsulated probiotic product to Cibo Vita for use in Yoggies, thereby inducing and contributing to ongoing infringement.

11.     For example, AnaBio and Cibo Vita prominently advertise the use of AnaBio's encapsulated probiotic product in Yoggies, as well as the close relationship between the two companies. Aidan Mould, Cibo Vita's senior brand manager for the "Nature's Garden" brand, stated that "Yoggies use AnaBio's microencapsulation technology to safely maintain and deliver

through a shelf stable snack [a] probiotic strain."[1]  Cibo Vita's CEO, Emre Imamoglu, called the incorporation of AnaBio's probiotic encapsulation technology into Yoggies "[a] turning point for the company."[2]

12.     Cibo Vita and AnaBio colluded to steal PIM's patent designs so they could fast track their way to sales and profit. And they disregard the truth, the law, and PIM's intellectual property rights in their quest to capture market share for the Yoggies product. AnaBio's irresponsible conduct has substantially harmed PIM and likely others, and it must be stopped.

## NATURE OF THE ACTION

13.     This is a civil action for infringement of the '267 and '640 patents, which is being filed under the United States patent laws, Title 35, United States Code, § 1 et. seq., including 35 U.S.C. §§ 271 and 281.

## THE PARTIES

14.     PIM is a corporation organized and existing under the laws of the State of Delaware and maintains a place of business at One PIM Plaza, Park Ridge, New Jersey 07656.

15.     PIM is the assignee and owner of the '267 and '640 patents.

16.     Defendant AnaBio is a corporation organized and existing under the laws of Ireland, and having a principal place of business at 11 Herbert Street, Dublin 2, Ireland.

17.     Defendant AnaBio is in the business of, *inter alia*, manufacturing, importing, marketing, and/or selling food products throughout the United States, including in the State of Texas.

---

[1] *Cibo Vita Stays Ahead in 'Smart Snacking' With Scientific Backing, Cutting-Edge Tech*, FOODNAVIGATOR USA, https://www.foodnavigator-usa.com/Article/2024/05/30/Cibo-Vita-stays-ahead-in-smart-snacking-with-scientific-backing-cutting-edge-tech/#:~:text=A%20turning%20point%20for%20the,probiotic%20strain%20Lactobacillus%20rhamnosus%20GG (last visited Nov. 24, 2025).

## THE ASSERTED PATENTS

18.    The '267 patent is entitled "Fruit Snack with Probiotics and Method of Manufacturing a Fruit Snack with Probiotics." The '267 patent issued on September 5, 2017, to Basant K. Dwivedi. PIM is the assignee and owner of the '267 patent. *See* Ex. A.

19.    The '640 patent is entitled "Fruit Snack with Probiotics and Method of Manufacturing a Fruit Snack with Probiotics." The '640 patent issued on May 3, 2022, to Basant K. Dwivedi. PIM is the assignee and owner of the '640 patent. *See* Ex. B.

20.    The '267 and '640 patents are the Asserted Patents in this case. These patents address practical problems with consumer food products containing probiotics. *E.g.*, '267 patent at 2:30-57, 4:45-56; '640 patent at 1:25-2:29, 4:45-59. Many conventional probiotic-containing foods—including fermented products like yogurt—contain a significant amount of moisture. *E.g.*, '267 patent at 2:6-13; '640 patent at 2:10-17. Because of this, these foods typically have limited shelf lives and require refrigeration. *E.g.*, '267 patent at 2:9-10; '640 patent at 2:13-14. The Asserted Patents describe a shelf-stable, probiotic-containing fruit snack product that protects its probiotic cultures by separating them from moisture in the fruit snack's fruit center.

21.    The Asserted Patents describe forming a fruit-based mixture (a "slurry"), cooking it to produce the center, covering the center with a barrier layer, and then applying an outer layer containing heat-sensitive ingredients such as probiotics. *E.g.*, '267 patent at 2:58-3:3, 3:11-30, 3:41-43, 3:46-48, 4:57-65, 5:3-8, 5:10-12, 5:22-32; '640 patent at 2:62-3:7, 3:8-33, 3:35-40, 3:45-47, 4:60-67, 5:1-6, 5:12-18, 5:29-33. The barrier layer is designed to substantially prevent moisture from the fruit center from migrating into the probiotic-containing outer layer, and, to facilitate this, the center is cooled before the barrier layer and/or outer layer is applied, which

---

[2] *Id.*

6

minimizes heat-related damage to these heat-sensitive ingredients. *E.g.*, '267 patent at 2:58-3:3, 3:11-30, 3:56-58, 5:9-10, 5:12-16, 5:32-39; '640 patent at 2:62-3:6, 3:7-33, 3:60-62, 5:12-18, 5:34-39.



22.     As shown above in Figure 1 of the '267 and '640 patents, one embodiment of the inventive fruit snack contains a center (element 12 in the above figure), a barrier layer (element 14), and an outer layer (element 16). '267 patent, Fig. 1; '640 patent, Fig. 1.

## JURISDICTION AND VENUE

23.     Plaintiff incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

24.     This is an action for patent infringement arising under the patent laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

25.     This Court has personal jurisdiction over AnaBio because, among other things, AnaBio has committed acts of induced infringement, contributory infringement, and joint infringement in the United States by knowingly importing into the United States encapsulated probiotic products that are specially adapted for use in the infringing Yoggies products, including in this District, and by purposefully directing such products and activities toward the United States market. For example, at least some of the infringing Yoggies products are sold through the Walmart Marshall Supercenter located at 1701 East End Boulevard North, Marshall, Texas 75670:[3]



AnaBio has therefore established sufficient minimum contacts with the United States such that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

26.     AnaBio transacts substantial business directed to the United States, including by supplying, marketing, and importing encapsulated probiotic products for incorporation into infringing Yoggies products, with the knowledge and expectation that such infringing products will be made, used, offered for sale, and sold throughout the United States, including in this

_____

[3] *Nature's Garden Yoggies,* Mixed Berry Probiotic 10CT, WALMART, https://www.walmart.com/ip/NG-Probiotic-Mixed-Berry-Yoggies (last visited Apr. 2, 2026).

District. AnaBio places its products into the stream of commerce with the intent and expectation that they will be incorporated into finished infringing products sold in the United States.

27. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(c)(3) because AnaBio is a foreign corporation organized under the laws of Ireland and has committed acts of infringement in this District.

## FACTS

28. Plaintiff incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

29. For years, consumers seeking to increase their probiotic intake were largely limited to drug supplements, such as tablets or pills, or other food products that were inconvenient, unappealing, or ill-suited for everyday snacking. PIM transformed the fruit snack industry by developing—and patenting—a confectionery product that delivers probiotics in a consumer-friendly, great-tasting form. Achieving a confectionery product with a long shelf life and substantial moisture content while maintaining viable probiotic cultures was challenging, but PIM overcame this challenge. PIM invented a barrier layer that prevents moisture migration from the center to the outer layer, allowing probiotics and other heat-sensitive components in the outer layer to remain viable throughout the product's shelf life. *See generally*, Exs. A, B.

30. Recognizing the commercial advantages of partnering with Cibo Vita to develop and commercialize a probiotic-containing confectionery product, AnaBio colluded with Cibo Vita to incorporate its encapsulated probiotic product into Cibo Vita's yogurt-covered fruit snack product in a way that embodies PIM's patented designs. In 2023, Cibo Vita, with AnaBio's assistance, introduced its copycat Yoggies product, which was deliberately designed to infringe PIM's patents. Upon information and belief, each Yoggie includes a fruit center, a barrier layer

9

that prevents moisture migration from the center, and an outer layer containing probiotics and/or other heat-sensitive components.

31.    By knowingly supplying, importing, and promoting encapsulated probiotic products specially adapted for use in the infringing Yoggie products, and by collaborating with Cibo Vita to develop and commercialize those products, AnaBio has induced, contributed to, and jointly participated in the infringement of the claims of the '267 and '640 patents asserted herein.

## THE ACCUSED PRODUCTS

32.    Plaintiff incorporates by reference every allegation set forth in the foregoing paragraphs of this Complaint as if fully set forth and restated herein.

33.    The Accused Products include Cibo Vita's coated confectionery products such as Probiotic Strawberry Yoggies, Probiotic Mixed Berry Yoggies, Probiotic Peach Mango Yoggies, Probiotic Lemonberry Yoggies, Probiotic Yoggies Snack Packs, Probiotic Mixed Berry Yoggies Trail Mix, Probiotic Lemonberry Yoggies Trail Mix, Probiotic Strawberry Yoggies Trail Mix, and Probiotic Yoggies Trail Mix Multipacks (collectively referred to herein as "Yoggies"), sold under its "Nature's Garden" brand.

34.    Sinead Bleiel, AnaBio's CEO, is a listed as an inventor on at least three international Cibo Vita patent publications—PCT Publication Nos. WO 2025/056631 ("'631 publication") (Ex. G), WO 2025/056630 ("'630 publication") (Ex. H), and WO 2025/215255 ("'255 publication") (Ex. I)—and two Cibo Vita U.S. patent applications—U.S. 19/328,595 ("'595 application) (Ex. J) and U.S. 19/332,340 ("'340 application) (Ex. K) (collectively referred to herein as the "AnaBio Patent Publications"). The Patent Publications describe edible products comprising centers, multiple coatings of one or more fatty materials (e.g., yogurt, chocolate), and probiotics. *See generally* Exs. G-K. Further details on the components and configurations described in the Patent Publications are contained in Exhibits L and M.

10

35.    Upon information and belief, the Accused Products embody the structural and compositional features disclosed in the Patent Publications. For example, upon information and belief, Yoggies are made using the materials and processes disclosed in the Patent Publications. Cibo Vita prominently advertises AnaBio's probiotics in its Yoggies. And Figure 6C of the '631 publication (Ex. G), Figure 6 of the '630 publication (Ex. H), and Figure 6 of the '255 publication (Ex. I), which are reproduced on the left side of Figure 1 below, depict a round edible confectionary product that appears to be one or more of the Accused Products.



**Figure 1.** (Comparison of AnaBio's Patent Publications' Figures to Exemplary Yoggies)

36.    Exemplary photographs of the Accused Products are provided below.



**Figure 2.** (Cross-Section of an Exemplary Yoggie)



**Figure 3.** (Cross-Section of an Exemplary Yoggie)

**Figure 4.** (Advertisement for Yoggies)

37.      AnaBio has induced, contributed to, and jointly participated in the infringement of at least the exemplary claims identified below of the '267 and '640 patents. AnaBio is liable for infringement by, *inter alia*, importing into the United States encapsulated probiotic products that are material parts of the claimed inventions, that are especially made or especially adapted for use in infringing products, that have no substantial non-infringing uses, and by actively encouraging, assisting, and facilitating Cibo Vita, to make, use, offer for sale, sell, and import infringing products in the United States.

## CLAIMS FOR RELIEF

### Patent Infringement of the '267 Patent
### (Under 35 U.S.C. § 271)

38.      Plaintiff incorporates by reference every allegation set forth in the foregoing paragraphs of this Complaint as if fully set forth and restated herein.

39.      AnaBio, without the authority or consent of PIM, has imported and continues to import into the United States encapsulated probiotic products that are especially made or adapted for use in products that infringe at least claims 1–15, 20–31, 36–42, 44–47, 50–60, and 63–66 of the '267 patent, and has induced, contributed to, and jointly participated in such infringement of at least those claims.

40.      A claim chart providing an exemplary infringement analysis for the independent claims of the '267 patent based on publicly available information is attached as Exhibit L.

13

41.     AnaBio jointly infringes the '267 patent by acting in concert pursuant to a common plan to make, use, offer for sale, sell, and import infringing products in the United States. This joint infringement arises, on information and belief, from AnaBio's contractual and business relationship with Cibo Vita. The contractual and business relationship between AnaBio and Cibo Vita is evident in AnaBio's co-inventorship with Cibo Vita on multiple patent applications and the public statements and press releases touting their collaboration in developing and commercializing the infringing Yoggie products.

42.     AnaBio also infringes the '267 patent indirectly by inducing and contributing to direct infringement in the United States. Upon information and belief, Cibo Vita directly infringes the '267 patent by making, using, offering for sale, selling, and importing infringing products that incorporate AnaBio's encapsulated probiotic products, and has been doing so since at least 2023. AnaBio knowingly and intentionally induces and contributes to this infringement.

43.     AnaBio has known about the '267 patent since at least April 12, 2024, when it received an International Search Report citing to the PIM patent publication that matured into the '267 patent during prosecution of international Cibo Vita Patent Publications on which AnaBio's CEO is a co-inventor. This knowledge was confirmed in September 2025, when the PIM patent publication that matured into the '267 patent was cited in Information Disclosure Statements submitted to the USPTO during prosecution of U.S. patent applications on which AnaBio's CEO is a co-inventor.

44.     AnaBio Vita has known about, or at least has been willfully blind toward, the infringing nature of the Yoggies product since May 12, 2024. On that date, the European Patent Office issued a substantive analysis that compared the designs described in the publication that led to the '267 patent to the designs that AnaBio and Cibo Vita adopted in the Accused Products, after which the European Patent Office concluded that the designs were similar. In its analysis,

14

the European Patent Office cited to and opined on three features at the heart of the infringement analysis in this case: the fruit center, the barrier layer, and the outer probiotic layer. Despite this knowledge, AnaBio has continued its infringing conduct.

45.    AnaBio's knowledge of the '267 patent and its infringing conduct are further confirmed by the filing and service of this Complaint.

46.    AnaBio jointly infringes at least one claim of the '267 patent with Cibo Vita, by acting in concert pursuant to a common plan to develop, manufacture, import, and commercialize infringing products incorporating AnaBio's encapsulated probiotic products. This joint infringement arises from AnaBio's contractual and business relationship with Cibo Vita, including their collaborative development efforts, AnaBio's co-inventorship on patent applications relating to the accused products, and public statements and press releases touting their partnership.

47.    AnaBio also infringes at least one claim of the '267 patent indirectly through contributory infringement by knowingly importing into and supplying within the United States encapsulated probiotic products that constitute material parts of the inventions claimed in the '267 patent, knowing that such components are especially made or especially adapted to practice one or more claims of the '267 patent, that they are not staple articles or commodities of commerce suitable for substantial non-infringing use, and that they are in fact used by Cibo Vita, to directly infringe those claims.

48.    AnaBio further infringes at least one claim of the '267 patent through inducement by, *inter alia*, knowingly marketing, promoting, offering for sale, and supplying its encapsulated probiotic products to Cibo Vita, with the specific intent that Cibo Vita make, use, sell, offer for sale, and import infringing products in the United States. Upon information and belief, AnaBio actively encourages and aids such infringement through product development and support efforts

15

it provides Cibo Vita, such as: (1) informing Cibo Vita about the technical design of its encapsulated probiotic product; (2) informing Cibo Vita about how to incorporate its encapsulated probiotic product into the copycat design of the Yoggies product; (3) providing assistance on how to use commercial production machinery to not damage encapsulated probiotics during manufacture; and (4) providing promotional materials describing the use and benefits of its encapsulated probiotics in products such as Yoggies. The facts above show that AnaBio knows about the '267 patent, knows it infringes that patent, and aids and abets that infringement. Thus, the allegations in this Complaint show that AnaBio induces and continues to induce infringement.

49.     Moreover, AnaBio's infringement is and has been willful. It has known about the '267 patent and its infringement of that patent since the European Patent Office compared (in an International Search Report dated May 12, 2024) the designs described in the publication that led to the '267 patent to the designs that AnaBio and Cibo Vita adopted in the Accused Products, and concluded that those designs were similar. Thus, Cibo Vita knew it infringed the Asserted Patents, or was at least willfully blind to the issue. Rather than stop its infringement, Cibo Vita has deliberately and willfully continued to infringe and still does so as of the current day.

50.     AnaBio's infringement of the '267 patent has caused and continues to cause damages and irreparable harm to PIM.

**Patent Infringement of the '640 Patent**
**(Under 35 U.S.C. § 271)**

51.     Plaintiff incorporates by reference every allegation set forth in the foregoing paragraphs of this Complaint as if fully set forth and restated herein.

52.     AnaBio, without the authority or consent of PIM, has imported and continues to import into the United States encapsulated probiotic products that are especially made or adapted

16

for use in products that infringe at least claims 1-3, and 6-20 of the '640 patent, and has induced, contributed to, and jointly participated in such infringement of at least those claims.

53.    A claim chart providing an exemplary infringement analysis for the independent claims of the '640 patent based on publicly available information is attached as Exhibit M.

54.    AnaBio jointly infringes the '640 patent by acting in concert pursuant to a common plan to make, use, offer for sale, sell, and import infringing products in the United States. This joint infringement arises, on information and belief, from AnaBio's contractual and business relationship with Cibo Vita. The contractual and business relationship between AnaBio and Cibo Vita is evident in AnaBio's co-inventorship with Cibo Vita on multiple patent applications and the public statements and press releases touting their collaboration in developing and commercializing the infringing Yoggie products.

55.    AnaBio also infringes the '640 patent indirectly by inducing and contributing to direct infringement in the United States. Upon information and belief, Cibo Vita directly infringes the '640 patent by making, using, offering for sale, selling, and importing infringing products that incorporate AnaBio's encapsulated probiotic products, and have been doing so since at least 2023. AnaBio knowingly and intentionally induces and contributes to this infringement.

56.    Moreover, AnaBio has known about the '640 patent since at least April 12, 2024, when it received an International Search Report citing to the PIM patent publication that matured into the '640 patent during prosecution of international Cibo Vita Patent Publications on which AnaBio's CEO is a co-inventor. This knowledge was confirmed in September 2025, when a PIM patent publication virtually identical to the disclosures in the '640 patent was cited in Information Disclosure Statements submitted to the USPTO during prosecution of U.S. patent applications on which AnaBio's CEO is a co-inventor.

17

57.     AnaBio Vita has known about, or at least has been willfully blind toward, the infringing nature of the Yoggies product since May 12, 2024. On that date, the European Patent Office issued a substantive analysis that compared the designs described in the publication that led to the '640 patent to the designs that AnaBio and Cibo Vita adopted in the Accused Products, after which the European Patent Office concluded that the designs were similar. In its analysis, the European Patent Office cited to and opined on three features at the heart of the infringement analysis in this case: the fruit center, the barrier layer, and the outer probiotic layer. Despite this knowledge, AnaBio has continued its infringing conduct.

58.     AnaBio's knowledge of the '640 patent and its infringing conduct are further confirmed by the filing and service of this Complaint.

59.     AnaBio jointly infringes at least one claim of the '640 patent with Cibo Vita, by acting in concert pursuant to a common plan to develop, manufacture, import, and commercialize infringing products incorporating AnaBio's encapsulated probiotic products. This joint infringement arises from AnaBio's contractual and business relationship with Cibo Vita, including their collaborative development efforts, AnaBio's co-inventorship on patent applications relating to the accused products, and public statements and press releases touting their partnership.

60.     AnaBio also infringes at least one claim of the '640 patent indirectly through contributory infringement by knowingly importing into and supplying within the United States encapsulated probiotic products that constitute material parts of the inventions claimed in the '640 patent, knowing that such components are especially made or especially adapted to practice one or more claims of the '640 patent, that they are not staple articles or commodities of commerce suitable for substantial non-infringing use, and that they are in fact used by Cibo Vita, to directly infringe those claims.

18

61.    AnaBio further infringes at least one claim of the '640 patent through inducement by, *inter alia*, knowingly marketing, promoting, offering for sale, and supplying its encapsulated probiotic products to Cibo Vita, with the specific intent that Cibo Vita make, use, sell, offer for sale, and import infringing products in the United States. Upon information and belief, AnaBio actively encourages and aids such infringement through product development and support efforts it provides Cibo Vita, such as: (1) informing Cibo Vita about the technical design of its encapsulated probiotic product; (2) informing Cibo Vita about how to incorporate its encapsulated probiotic product into the copycat design of the Yoggies product; (3) providing assistance on how to use commercial production machinery to not damage encapsulated probiotics during manufacture; and (4) providing promotional materials describing the use and benefits of its encapsulated probiotics in products such as Yoggies. The facts above show that AnaBio knows about the '640 patent, knows it infringes that patent, and aids and abets that infringement. Thus, the allegations in this Complaint show that AnaBio induces and continues to induce infringement.

62.    Moreover, AnaBio's infringement is and has been willful. It has known about the '640 patent and its infringement of that patent since the European Patent Office compared (in an International Search Report dated May 12, 2024) the designs described in the publication that led to the '640 patent to the designs that AnaBio and Cibo Vita adopted in the Accused Products, and concluded that those designs were similar. Thus, Cibo Vita knew it infringed the Asserted Patents, or was at least willfully blind to the issue. Rather than stop its infringement, Cibo Vita has deliberately and willfully continued to infringe and still does to the current day.

63.    AnaBio's infringement of the '640 patent has caused and continues to cause damages and irreparable harm to PIM.

19

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.      The entry of judgement under 35 U.S.C. § 271(a), (b) and/or (c) that Defendant's making, using, offering to sell, selling or importing of Defendant's Accused Products prior to the expiration of the '267 patent will infringe, actively induce infringement, and/or contribute to the infringement of the '267 patent under 35 U.S.C. § 271(a), (b) and/or (c);

B.      The entry of judgement under 35 U.S.C. § 271(a), (b) and/or (c) that Defendant's making, using, offering to sell, selling or importing of Defendant's Accused Products prior to the expiration of the '640 patent will infringe, actively induce infringement, and/or contribute to the infringement of the '640 patent under 35 U.S.C. § 271(a), (b) and/or (c);

C.      The entry of a preliminary and/or permanent injunction, enjoining Defendant and all persons acting in concert with Defendant from commercially manufacturing, using, offering for sale, or selling Defendant's Accused Products within the United States, or importing Defendant's Accused Products into the United States, until the expiration of the '267 patent, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

D.      The entry of a preliminary and/or permanent injunction, enjoining Defendant and all persons acting in concert with Defendant from commercially manufacturing, using, offering for sale, or selling Defendant's Accused Products within the United States, or importing Defendant's Accused Products into the United States, until the expiration of the '640 patent, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

E.      The issuance of an order that Defendant certify that it has destroyed all infringing products in its possession;

20

F.      An award to Plaintiff adequate to compensate for Defendant's infringement pursuant to 35 U.S.C. § 284, in an amount to be determined at trial, as a result of Defendant's infringement of the '267 patent;

G.      An award to Plaintiff adequate to compensate for Defendant's infringement pursuant to 35 U.S.C. § 284, in an amount to be determined at trial, as a result of Defendant's infringement of the '640 patent;

H.      Granting Plaintiff pre- and post-judgment interest on damages, together with all costs and expenses;

I.      Granting Plaintiff reasonable attorney fees pursuant to 35 U.S.C. § 285; and

J.      Awarding such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury on all claims so triable.


Respectfully submitted,


Dated:  April 2, 2026                    By:  */s/ Michael Aragon*


Michael Aragon
DC Bar No. 1736340*
David K. Mroz
*Pro hac vice to be filed*
FINNEGAN, HENDERSON,
    FARABOW, GARRETT &
    DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4133

*Attorneys for Plaintiff Promotion In Motion, Inc.*

*admitted to the Eastern District of Texas

21